```
                UNITED STATES DISTRICT COURT              FILED
                NORTHERN DISTRICT OF ALABAMA
                    NORTHWESTERN DIVISION              04 OCT 27 PM 12:01

                                                       U.S. DISTRICT COURT
                                                       N.D. OF ALABAMA
```

RILOUS PERKINS,                )
                               )
    Plaintiff,              )
                               )
vs.                            )    Civil Action No. CV-02-S-2863-NW
                               )
RIVERBEND CENTER FOR           )
MENTAL HEALTH, *et al.*,       )                       ENTERED
                               )
    Defendants.             )                      OCT 27 2004

## MEMORANDUM OPINION

This action is before the court on defendants' motion for summary judgment (doc. no. 11). Plaintiff, Rilous Perkins, brought suit against defendants, Riverbend Center for Mental Health, Inc., and Bryan Libell. Plaintiff principally alleges that he was terminated on the basis of his race, African American, in violation of both Title VII of the Civil Rights of Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981. In addition, he alleges that he was deprived of due process and equal protection of the laws. The remedial vehicle for plaintiff's § 1981 race discrimination claim, and, his due process and equal protection claims is 42 U.S.C. § 1983.[1] Finally,

---

[1] *See, e.g., Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000) (holding that nothing contained in the 1991 amendments to § 1981 manifested a Congressional intent to alter the Supreme Court's conclusion in *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S. Ct. 2702 (1989), which held that 42 U.S.C. § 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981); *id.* at 894 ("Nothing in the 1991 amendment to § 1981 evinces Congress' desire to alter the Supreme Court's conclusion in *Jett*."); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995) (same).



plaintiff alleges a supplemental state law claim for breach of contract.[2] *See* 28 U.S.C. § 1367(a). Defendants move for summary judgment on each claim.

## I. FACTUAL BACKGROUND

Defendant Riverbend Center for Mental Health ("Riverbend") is a regional, nonprofit corporation. The members of its Board of Directors are appointed by the County Commissions of Colbert, Lauderdale, and Franklin Counties in the State of Alabama.[3] Riverbend receives funds from the State of Alabama, Medicare, Medicaid, and the counties in which it serves persons suffering from mental illnesses.[4]

Plaintiff began his employment with Riverbend in 1997, working in the capacity of a "house manager."[5] Riverbend provided plaintiff a copy of its Personnel Policies and Procedures (hereinafter, "the manual").[6] Although plaintiff denied reading the entire manual, he conceded that he had ample opportunity to do so.[7] Further, even though plaintiff claims that he was not aware he was an employee-at-will, the manual specifically provides that plaintiff *was* an employee-at-will, and that

---

[2] *See* Complaint (doc. no. 1).
[3] *See* Def. Exhs. 11 at 15-16; 13; and 14 (doc. no. 13).
[4] *See* Def. Exh. 11 at 16-17, 31.
[5] *See* Def. Exh. 1 at 34-37.
[6] *See id.* at 37 and Def. Exh. 2 (Personnel Policies and Procedures).
[7] *See* Def. Exh. 1 at 39.

2

he could be terminated at any time with or without cause, and, with or without notice.[8] The manual also explicitly provides that it is for informational purposes only, and does not create a contract between plaintiff and Riverbend.[9]

Plaintiff received favorable evaluations throughout his employment with Riverbend.[10] On December 1, 2001, however, a Riverbend employee named Joann McDougal lodged a written grievance, complaining about plaintiff's conduct at work and his treatment of a client of the mental health center.[11] McDougal, who is Caucasian, referred to plaintiff's "raging temper" and cited specific examples.[12] McDougal also relayed a complaint from a client who plaintiff allegedly called a "gigolo," and threatened to throw off the van if he didn't stop coughing.[13] Finally, McDougal complained about having to listen to comments from plaintiff concerning the plight of black males in a white society, and statements that "when he sees a white woman that just means trouble for him."[14]

Riverbend conducted an investigation. Plaintiff was informed about the

---

[8] *See* Def. Exh. 1 at 41, Def. Exh. 2 at 14, Def. Exh. 11 at 130.
[9] *See* Def. Exh. 2 at 6.
[10] *See* Pl. Exh. 5. During an Employee Conference on November 2, 2000, plaintiff's display of volatile emotions was discussed and an action plan was established to eliminate his emotional volatility. *See* Def. Exh. 4.
[11] *See* Pl. Exh. 11 (doc. no. 16).
[12] *See id.*
[13] *See id.*
[14] *Id.*

complaint when he was called into an office with Valerie Wesson, his immediate supervisor. Elizabeth James, Wesson's immediate supervisor, and Marty Sims, Riverbend's human resources director, also were present.[15] Plaintiff was not shown McDougal's written complaint, but portions were read to him.[16] Plaintiff's response to the charges was that they were not true.[17]

After concluding the investigation, Marty Sims reported his findings to Bryan Libell, Riverbend's CEO, and Libell made the decision to terminate plaintiff.[18] An Employee Termination Conference was held on February 25, 2002, during which plaintiff was informed by Sims of the result of his investigation. The notes from the termination conference reflect in pertinent part:

> I began the meeting by informing [plaintiff] that our investigation, involving the written complaint by a coworker, had been completed. I informed [plaintiff] that I had conducted a thorough investigation and had interviewed staff who were working with him presently and some who had worked with him in the past.
>
> I informed [plaintiff] that the result of my investigation had supported the fact that his behavior had been volatile, intimidating, and often interpreted as harassing by his peers. I informed [plaintiff] that due to the positive results of the investigation that we felt that there was no choice but to terminate his employment. I informed [plaintiff] that he

---

[15] See Def. Exh. 1 at 92-93.
[16] See id. at 105, 106.
[17] See id. at 106.
[18] See Pl. Exh. 2 at 117-18. The results of Sims' investigation are contained in Employee Conference notes attached to Pl. Exh. 11 and Def. Exhs. 6-9.

4

could take advantage of the grievance process if he so desired.[19]

Riverbend had a grievance procedure in place on the dates plaintiff was employed and terminated.[20] Plaintiff concedes that he did not take advantage of the procedure following his termination.[21] The grievance procedure provides that, following any employment action with which the employee is dissatisfied, he or she must request a scheduled conference with his or her immediate supervisor.[22] The employee may then request an appeal to the "Leadership Team" member.[23] If an employee is still dissatisfied, appeal may be made to Riverbend's Chief Executive Officer ("CEO").[24] An appeal from any decision of the CEO is available to the employee with the Board's Executive Committee.[25] The decision of the Executive Committee is final.[26] Plaintiff did not take advantage of the grievance process. He filed a charge of discrimination with the EEOC, which issued a right to sue letter on August 26, 2002.[27]

Plaintiff contends he was terminated based on race because, although he had

---

[19] Pl. Exh. 11 (last page).
[20] See Def. Exh. 1 at 42-43, Def. Exh. 2 at 53, Def. Exh. 11 at 130.
[21] See Def. Exh. 1 at 43.
[22] See Def. Exh. 2 at 53, Def. Exh. 11 at 130-31.
[23] See Def. Exh. 2 at 53.
[24] See id.
[25] See id.
[26] See id.
[27] See Def. Exh. 10.

5

received good work evaluations, Riverbend chose to believe McDougal, a Caucasian female, instead of him.[28] Plaintiff cannot point to any person outside his protected class who has exhibited similar temper problems, or who was accused of similar harassment, but was not terminated.[29]

Although plaintiff believes that he did not receive appropriate raises during his employment at Riverbend because of his race, he does not know what other employees were paid, and admitted that he does not know the amount of anyone's raise.[30] Plaintiff conceded that this was simply his opinion.[31]

When asked whether he witnessed or overheard anything he considered to be racially derogatory during his employment, plaintiff testified that his supervisor, Valerie Wesson, asked him if he believed she would ever make a racial remark.[32] Wesson told plaintiff that Lawana Rhodes, an African American employee who also worked as a house manager, told other employees that Wesson stated she could call Rhodes a "nigger," and that Rhodes would "just have to take it."[33] Wesson, however, was merely asking plaintiff if he believed Wesson would ever make such a

---

[28] See Def. Exh. 1 at 154-55.
[29] See id. at 158-59.
[30] See id. at 59-62.
[31] See id. at 62.
[32] See id. at 62-63.
[33] See id. at 63-65.

comment.[34] Plaintiff did not overhear Wesson make such a statement, and he does not believe his conversation with Wesson was inappropriate.[35] Other than this one conversation with Wesson, plaintiff did not witness or hear anything that he believed was racially offensive or inappropriate.[36]

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

---

[34] *See id.* at 65.
[35] *See id.* at 65-67.
[36] *See id.* at 70.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

### A.   Discrimination Claims Under Title VII and §§ 1981, 1983[37]

Plaintiff has presented no direct evidence of a racially discriminatory intent, and the court accordingly will evaluate this claim by application of the analytical framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See also*

---

[37] Section 1981 generally is described as "a parallel remedy against [racial] discrimination which . . . derive[s] its legal principles from Title VII." *Crawford v. Western Electric Co., Inc.*, 614 F.2d 1300, 1315 n.27 (5th Cir. 1980) (quoting *Blum v. Gulf Oil Corp.*, 597 F.2d 936 (5th Cir. 1979)); *see also, e.g., Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."); *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980) ("When section 1981 is used as a parallel basis for relief with . . . Title VII against disparate treatment in employment, its elements appear to be identical.") (citations omitted).

To the extent Riverbend is capable of being sued under § 1983, the elements of a § 1983 claim of race discrimination also are the same as the elements of a Title VII claim of race discrimination. *See Rice-Lamar v. City of Fort Lauderdale, Florida*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Under that now familiar framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *see also Burdine*, 450 U.S. at 253-54 & n.6, 101 S. Ct. at 1093-94 & n.6. "The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094). To rebut the presumption of intentional discrimination raised by a plaintiff's demonstration of a *prima facie* case, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [contested employment decision]." *Burdine*, 450 U.S. at 255, 101 S. Ct. at 1094. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [a] discriminatory animus," *Burdine*, 450 U.S at 257, 101 S. Ct. at 1096, the presumption of discrimination created by the prima facie case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10, 101 S. Ct. at 1094-95 & n.10. The burden then shifts to the plaintiff to "come

forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095; *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825). *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). If a plaintiff does so, then he or she "is entitled to survive summary judgment." *Combs*, 106 F.3d at 1529. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106.

The Eleventh Circuit has held that a plaintiff seeking to make out a *prima facie* case of disparate treatment in employment under either Title VII or (as here, in a claim based upon the plaintiff's race) 42 U.S.C. § 1981, must generally show that: (1) he is a member of a protected class of persons, such as a racial minority; (2) he was subjected to an adverse employment action (*e.g.*, his employment was

terminated); (3) the employer treated similarly situated employees outside his protected class more favorably; and (4) he was qualified to do the job from which he was fired. *See, e.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *Brown v. American Honda Motor Company, Inc.*, 939 F.2d 946, 949 (11th Cir. 1991) (observing that "[t]he Supreme Court has held that the test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases") (citations omitted).

Plaintiff fails to establish a *prima facie* case because he can point to no similarly situated employees outside his protected class who were treated more favorably. This is fatal to any claim of racial discrimination, and summary judgment is due to be granted on the race discrimination claims for this reason alone.

Even assuming a *prima facie* case could be proven, defendants have offered a legitimate non-discriminatory reason for terminating plaintiff's employment. Defendants maintain that plaintiff was terminated as a result of the investigation into a coworker's complaint, which revealed that plaintiff engaged in volatile and intimidating behavior. Plaintiff has utterly failed to produce any evidence to show this was a pretext for discrimination. Accordingly, summary judgment is due to be

11

granted on this claim.[38]

## B.   Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides, in part, that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.[39] 42 U.S.C. § 1983 provides a means of seeking redress against state, county, and municipal governmental entities and officials whose conduct under color of state law deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. The statute was enacted for the express purpose of enforcing the Fourteenth Amendment.[40] In pertinent part, it provides that:

---

[38] It is difficult to discern the specific allegations made against defendant Bryan Libell in plaintiff's complaint. To the extent plaintiff attempts to sue Libell for discrimination under Title VII, Libell is not plaintiff's employer and, thus, cannot be liable under Title VII. *See Busby v. City of Orlando*, 930 F.2d 764, 772 (11th Cir. 1991). To the extent plaintiff attempts to sue Libell under § 1983 in his official capacity as CEO of the corporate employer, such claims are considered to be the same as those against defendant, Riverbend. *See Lassiter v. Alabama A&M University*, 3 F.3d 1482, 1485 (11th Cir. 1993) ("Official capacity actions are deemed to be against the entity of which the officer is an agent."). Thus, if Riverbend is entitled to summary judgment, so is Libell, in his official capacity.

[39] In whole cloth, § 1 of the Fourteenth Amendment provides that:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[40] *See, e.g., Mitchum v. Foster*, 407 U.S. 225, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972), in which the Supreme Court observed that:

12

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

42 U.S.C. § 1983.

"There is no difference between the scope of Title VII and the scope of the Equal Protection Clause concerning intentional discrimination in the form of disparate treatment in the public workplace: when utilized as parallel remedies for such discrimination, the elements of a claim under each are identical." *Snider v. Jefferson State Community College*, 344 F.3d 1325, 1331 (11th Cir. 2003). In substance, therefore, to prevail on his equal protection claim plaintiff must establish

---

> Section 1983 was originally § 1 of the Civil Rights Act of 1871. . . . It was "modeled" on § 2 of the Civil Rights Act of 1866, . . . and was enacted for the express purpose of "enforc[ing] the provisions of the Fourteenth Amendment." . . . The predecessor of § 1983 was thus an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and constitutional amendment. As a result of the new structure of law that emerged in the post-Civil Way era — and especially of the Fourteenth Amendment, which was its centerpiece — the role of the Federal Government as a guarantor of basis federal rights against state power was clearly established. . . . Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.

*Id.* at 238-39, 92 S. Ct. at 2159-60 (citations and footnotes omitted).

that he was treated differently than similarly situated persons who were not African American, and that defendant terminated plaintiff for the purpose of discriminating against him on the basis of his race. *See Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996); *E&T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987). As plaintiff failed to provide any evidence he was treated differently from similarly situated persons who were not African American, he cannot maintain an equal protection claim. Plaintiff further failed to produce any evidence that defendant intentionally discriminated against him on the basis of his race. Summary judgment accordingly is due to be granted on this claim.

C.  **Due Process Claim**

Defendants move for summary judgment arguing that plaintiff was an at-will employee. It is well-established in the Eleventh Circuit that there is no property interest in at-will employment. *See Green v. City of Hamilton Housing Authority*, 937 F.2d 1561, 1564 (11th Cir. 1991). Plaintiff's procedural due process claim can succeed only if he has a property interest in continued employment. The Supreme Court has stated:

> As we explained in *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that

secure certain benefits and that support claims of entitlement to those benefits." *Id.*, at 577, 92 S. Ct., at 2709.

*Parratt v. Taylor*, 451 U.S. 527, 529 n.1, 101 S. Ct. 1908, 1910 n.1, 68 L. Ed. 2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). In his response to defendants' summary judgment motion, plaintiff fails to overcome this hurdle. Plaintiff can point to no authority under state law to indicate that he has a property interest in continued employment. Accordingly, summary judgment on the due process claim is due to be granted.

**D.     Breach of Contract Claim**

In summary, all federal claims are due to be dismissed. The only remaining claim is that for breach of contract under state law. In cases such as the present one, however, where the court's original jurisdiction was based solely upon federal questions, the district court has discretion to entertain state claims that are supplemental to the federal claims. *See* 28 U.S.C. § 1367(a). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7, 98 L. Ed. 2d 720 (1988); *see also L.A. Draper & Son V. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (stating that "if the federal claims are

dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims"). The court declines to exercise jurisdiction over the remaining state law claim for breach of contract. Accordingly, this claim is due to be dismissed without prejudice to plaintiff's right to pursue it in an appropriate state forum, if he chooses.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __27th__ day of October, 2004.

_____
United States District Judge